<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ANITA DEVILLE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-2034 (GEB-MCA) |
| GIVAUDAN FRAGRANCES CORPORATION; and ABC CORPS. 1-10; | ) ) ) | **MEMORANDUM OPINION** |
| Defendants. | ) ) ) | |

**<u>BROWN, Chief Judge</u>**

      This matter comes before the Court upon the motion for summary judgment filed by defendant Givaudan Fragrances Corporation ("Givaudan" or "defendant") (Doc. No. 24) and the motion appealing Magistrate Judge Arleo's award of sanctions against plaintiff's counsel (Doc. No. 46). Both motions are opposed. The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant the motion for summary judgment and affirm the award of sanctions.

**I.    BACKGROUND**

      This employment discrimination case began on April 24, 2008, when Anita DeVille ("plaintiff") filed a four-count complaint alleging: (1) violation of the Age Discrimination in Employment Act ("ADEA"); (2) retaliation in violation of the ADEA; (3) violation of the New

1

Jersey Law Against Discrimination ("NJLAD"); and (4) retaliation in violation of the NJLAD. (Compl.; Doc. No. 1.)

    A.    **Facts**

The following undisputed facts are taken from the parties' Statements of Undisputed Material Facts filed pursuant to L. CIV. R. 56.1. Givaudan is in the business of creating, producing, and marketing fragrances that are used in consumer products, perfumes, and colognes. (Def.'s 56.1 Stmt. at ¶ 1; Doc. No. 24-2.) It is disputed whether plaintiff began her employment in 1991, as defendant claims, or in 1987, as plaintiff claims. (*Id.* at ¶ 4; Pl.'s 56.1 Stmt. at ¶ 4.) While employed at Givaudan, plaintiff worked as a project manager and later a creative fragrance manager wherein she worked on projects involving air care, home fragrances, and body care products. (*Id.* at ¶¶ 5-8.) In 2000, plaintiff was hired as an account executive on Givaudan's North American New Business Team for "Client A."[1] (*Id.* at ¶ 9.)

Plaintiff's boss on the Client A team was Andrew Herskee, the North American regional account manager for Client A consumer product sales. (*Id.* at ¶ 12.) Mr. Herskee's manager was Thierry Audibert, the world account manager for Client A consumer product sales. (*Id.*) In 2006, plaintiff was promoted to senior account executive on the same Client A team. (*Id.* at ¶ 17.) While at Givaudan, plaintiff's presentation skills were identified as an area in need of improvement in her 2001 development plan. (*Id.* at ¶ 25.) This development plan noted that plaintiff's "presentation skills are still an issue in some detail areas." (*Id.* at ¶ 26.) In the spring of 2006, plaintiff made a presentation to Givaudan's entire sales team at a meeting in Bermuda

---

[1] To protect confidential information as that term is defined in the November 6, 2008 Discovery Confidentiality Order, the parties have agreed not to identify Givaudan clients by name, and instead refer to them by agreed-upon labels such as "Client A."

which she herself later described as being "horrendous." (*Id.* at ¶¶ 27-28.)

In March 2007, Givaudan acquired Quest, a flavors and fragrance company. (*Id.* at ¶ 31.) Givaudan's acquisition of Quest resulted in an integration of the two companies' workforces and job position eliminations. (*Id.* at ¶ 32.) Plaintiff testified that at the time of the acquisition, she understood "Quest had a person who handled [Client A] and, more specifically, that [the Quest employee] was managing the beauty care business." (*Id.* at ¶ 35.) Mr. Audibert spoke with plaintiff about her assuming a new position, but plaintiff contends that she never received enough details for this to form a specific job offer. (*Id.* at ¶¶ 36-37; Pl.'s 56.1 Stmt. at ¶¶ 36-37.) Mr. Audibert selected Celine Wanner (who is 6 years younger than plaintiff), the former Quest Vice President of International Accounts for Client A, for the new senior account manager position covering both beauty care and oral care businesses for Client A. (Def.'s 56.1 Stmt. at ¶ 38.) Plaintiff admittedly had no prior experience in the oral care business. (*Id.* at ¶ 23.) Ms. Wanner, on the other hand, had 17 years of experience selling oral care products at Quest and Noville (her prior employers). (Wanner Cert. ¶¶ 3-8, 10; Doc. No. 24-7.)

In February 2006, a year prior to the merger with Quest, Colin O'Neill, Givaudan's President of U.S. Consumer Products, sent an e-mail to Mr. Audibert about plaintiff's proposed promotion to senior account executive for Client A. (Def.'s 56.1 Stmt. at ¶ 19.) This e-mail reads:

> While I agree [plaintiff] has done a reasonable job, my concern remains that she is not the ideal long term fit for the account.....or the company. It is my belief that we should have our best people on our best businesses. I am OK with your decision and proposal but just keep in mind that if we promote her, and then decide that we need a better quality of person, it will be almost impossible to let her go. By promoting her we are reinforcing that she is doing a great job which, when combined with her age and her gender, will

3

make it very difficult to make a change.

(Elliott Cert. Ex. A., E-mail from C. O'Neill to T. Audibert (Dated Feb. 28, 2006); Doc. No. 30-2.)

In or about June 2007, Givaudan notified plaintiff that her employment with Givaudan would end. (Def.'s 56.1 Stmt. at ¶ 46.) In that same month, plaintiff became aware of an open Givaudan account executive sales position on a Client E account. (*Id.* at ¶ 50.) Plaintiff states that she stumbled upon this opening herself, as opposed to being notified by an internal memorandum or e-mail as was standard practice. (Pl.'s 56.1 Stmt. at ¶¶ 50-52.) Plaintiff did not apply for this position because the settlement agreement that she was in the process of negotiating expressly demanded that she not seek employment with Givaudan. (*Id.* at ¶ 51.)

In late October 2007, plaintiff applied for another position, a specialty retail sales position in Givaudan's Fine Fragrances Division. (Def.'s 56.1 Stmt. at ¶ 55.) This specialty retail position was located in New York City and reported to the vice president of specialty retail fragrances, Alison Chaneski. (*Id.* at ¶ 57.) Plaintiff and Ms. Chaneski were already friendly for approximately 10 years prior to October 2007. (*Id.* at ¶ 60.) In November 2007, Ms. Chaneski interviewd plaintiff for the fine fragrances position, during which plaintiff informed Ms. Chaneski that she had filed a Charge with the EEOC against Givaudan for her prior termination. (*Id.* at ¶¶ 61, 62.) In late November 2007, Ms. Chaneski selected "MG," another internal Givaudan candidate, for the fine fragrances position. (*Id.* at ¶ 66.) MG had a masters' degree in marketing and management for cosmetics and fragrance from the New York Fashion Institute of Technology, while plaintiff did not even possess a bachelor's degree. (Chaneski Cert. ¶ 14; Doc. No. 24-6; Def.'s 56.1 Stmt. at ¶ 78.) The job opening in Fine Fragrances required a Bachelors

4

degree, and was listed as "masters degree preferred." (Lario Cert. Ex. P; Doc. No. 24-5.) Plaintiff possessed neither of these degrees.

## II.     DISCUSSION

### A.     Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

### B.     Application

Defendant moves for summary judgment, arguing that plaintiff's claims fail as a matter of law because defendant has articulated a legitimate reason for its employment decision. (Def.'s Br. at 22; Doc. No. 24.) Defendant argues that: (1) it has articulated a legitimate reason for its employment decision, namely that plaintiff's position was eliminated due to a redundancy in positions caused by the merger with Quest; (2) plaintiff cannot show that defendant's reasons for

terminating her employment are a pretext for age discrimination; (3) plaintiff cannot show that her termination was motivated by her age; and (4) plaintiff's retaliation claims fail as a matter of law because plaintiff cannot show that there was a causal connection between her EEOC charge and the decision not to hire her for the fine fragrances position.

### 1.     *Disparate Treatment Claims*

A plaintiff who alleges disparate treatment under the ADEA "must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs. Inc.*, 129 S. Ct. 2343, 2352 (2009).  A plaintiff must establish that age "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Id.* at 2350.  The Third Circuit makes no distinction between its analysis of ADEA claims and its analysis of NJLAD age discrimination claims. *Kelly v. Moser, Patterson and Sheridan, LLP*, 2009 U.S. App. LEXIS 22352, at *2 n.2 (3d Cir. Oct. 9, 2009).

In evaluating summary judgment motions involving age discrimination claims, courts use the three-tier analysis established in *McDonnell Douglass v. Green*, 411 U.S. 792 (1973).[2]  Under this framework, a plaintiff must first establish a *prama facie* case from which an inference of discrimination might be drawn.  A *prima facie* case is established when: (1) she is over 40; (2) she is qualified for the position in question; (3) she suffered an adverse employment decision; and (4) she was replaced by a sufficiently younger person to create an inference of age

---

[2] The Supreme Court "has not definitively decided whether this evidentiary framework" remains appropriate in the ADEA context. *Gross*, 129 S. Ct. at 2349, n. 2.  However, courts continue to apply this burden-shifting framework. *See Heilman v. Allegheny Energy Serv. Corp.*, 2009 U.S. App. LEXIS 24937, at *6 (3d Cir. Nov. 12, 2009); *Mitchell v. UBS Serv. USA LLC*, 2009 U.S. Dist. LEXIS 54306, at *27, n. 10 (D.N.J. June 26, 2009).

discrimination. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). If a plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate non-discriminatory reason for the challenged adverse employment action. In order to prevail, the plaintiff must then adduce evidence that the employer's reason is not credible. *St. Mary Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 n. 1 (3d Cir. 2001). In order to establish pretext, plaintiff cannot merely show that "the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (internal quotations omitted).

Defendant argues that it has "demonstrated through evidence that plaintiff's job was eliminated due to the acquisition of Quest and the resulting right-sizing process, both legitimate non-discriminatory reasons." (Def.'s Br. at 22; Doc. No. 24.) Defendant also argues that the selection of Celine Wanner for plaintiff's original position was based on her superior qualifications and also that Ms. Wanner is only five years younger than plaintiff.[3] (*Id.*) Plaintiff argues that the case should survive summary judgment because "much is in dispute," including the identity of the person that made the decision to terminate plaintiff (Mr. O'Neill or Mr. Audibert). (Pl.'s Br. at 6-8; Doc. No. 33.) Plaintiff also claims that she was never formally offered a new position which she allegedly refused to accept. (*Id.* at 8.) Plaintiff also disputes whether her position was eliminated due to a reduction-in-force brought on by the merger with

---

[3] The exact amount of separation in age between plaintiff and Ms. Wanner has been described in the papers as five, six, and seven years in various places. Though exact birth dates are redacted, it is undisputed that plaintiff was born in 1950 and Celine Wanner was born in 1956.

7

Quest because defendant's position was marked "vacant" on her termination forms and the defendant was advertising open positions at the time plaintiff was terminated. (*Id.* at 9.)

Plaintiff also submits statistics and an expert report stating that of 29 employees that were terminated as part of the Quest acquisition, fourteen were age 55 and over, which allegedly suggests a discriminatory preference for terminating older employees. (Pl.'s Br. at 10; Doc. No. 33; Elliott Cert. Ex. M; Doc. No. 30-3.) Further, plaintiff makes much of the e-mail from Mr. O'Neill to Mr. Audibert which states that "[b]y promoting her we are reinforcing that she is doing a great job which, when combined with her age and her gender, will make it very difficult to make a change." (Elliott Cert. Ex. A.)

The Court concludes that this e-mail is not probative of a discriminatory intent. It is merely a prediction in which Mr. O'Neill noted that it is difficult to terminate employees of protected classes. It is undisputed that plaintiff recognized the possible redundancies between her position and a similar position that existed at Quest. (Def.'s 56.1 Stmt. at ¶35.) The Court further concludes that plaintiff has demonstrated no evidence of a discriminatory animus, and that defendant has articulated a legitimate reason for plaintiff's termination, namely that the position was eliminated due to a reduction-in-force. The position was filled by a more qualified candidate who had significantly more experience in the oral care business, and who did not suffer from plaintiff's admitted problems giving presentations. (Def.'s 56.1 Stmt. at ¶¶ 42, 43.) Additionally, plaintiff has submitted no evidence that anyone is performing her former job functions on the Client A team besides Celine Wanner. Therefore, the Court concludes that the defendant has articulated a legitimate non-discriminatory reason for the challenged adverse employment action.

Plaintiff's statistics also belie a finding of age discrimination.  Having no evidence of her own disparate treatment besides a single misconstrued e-mail, plaintiff attempts to use an expert witness to prove that defendant routinely pushed older people out of the work force.  (Pl.'s Br. at 21; Doc. No. 33.)  However, in his deposition the expert testified that he found no evidence of age bias when evaluating the terminated and retained population over and under age 40 (the cutoff age designating the beginning of the protected class) and even over and under age 50.  (Lario Decl. Ex. H; Soudry Dep., 55:6-15, 73:3-7, 135:9-12.)  In short, there is simply no evidence presented that defendant had a pattern or practice of terminating employees on the pretext of their age besides plaintiff's own conclusory statements.

Based on the undisputed material facts and taking all inferences in a light most favorable to the plaintiff, the Court must conclude that plaintiff has failed to state a discrimination claim as a matter of law.  The Court will grant summary judgment on claims I and II of the complaint.

### 2. Retaliation Claims

Defendant next argues that plaintiff's retaliation claims fail as a matter of law.  (Def.'s Br. at 33; Doc. No. 24.)  Plaintiff alleges that she was turned down for the job in Fine Fragrances because she told her interviewer, Ms. Chaneski, that she had filed a charge with the EEOC.  (Pl.'s Br. at 24; Doc. No. 33.)  In order to establish a *prima facie* case of retaliation, plaintiff must show that she: (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) established a causal connection between the protected activity and the adverse employment action.  *Fogelman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002).  If plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate non-retaliatory reason for the challenged action.  *McBride v. Princeton*

*Univ.*, 1991 U.S. Dist. LEXIS 5677, at *16 (D.N.J. Apr. 24, 1991) (citing *Jamison v. Rockaway Twp. Bd. of Educ.*, 242 N.J. Super. 436, 445 (App. Div. 1990)). New Jersey courts have adopted governing federal law under the ADEA for age claims under the NJLAD. *Carmona v. Resorts Int'l Hotel, Inc.*, 189 N.J. 354, 370 (N.J. 2007).

Defendant argues that plaintiff cannot establish the requisite causal connection between her EEOC charge and Givaudan's decision not to hire her for the Fine Fragrances division. (Def.'s Br. at 35; Doc. No. 24.) Plaintiff argues that not only was she not considered for the Fine Fragrances job, but she was terminated early (in December 2007 instead of March 2008) because she filed the EEOC complaint. (Pl.'s Br. at 24; Doc. No. 33.) Plaintiff submits no evidence other than the temporal proximity of the EEOC complaint to two negative outcomes (her failure to obtain the Fine Fragrances job and her early termination) to support her contention of retaliation.

Further, the Fine Fragrances position had an educational requirement of "Bachelors degree required, Masters degree preferred." (Lario Cert. Ex. P.; Doc. No. 24-5.) Plaintiff does not dispute that she did not possess either of these qualifications, and it is clear from MG's[4] resume that she possessed not only a Bachelors and Masters degree, but also had eight years of experience with fine fragrance products. (Chaneski Cert., ¶ 14; Doc. No. 24-6.) This is undisputed evidence that there was a legitimate, non-retaliatory reason for Givaudan's employment decision – plaintiff was not hired for the Fine Fragrances position because MG was significantly and objectively more qualified.

---

[4] MG is the person who was hired for the Fine Fragrances position instead of plaintiff. Initials are used to protect this individual's identity. (Chaneski Cert. ¶¶ 13-17.)

Alleged temporal proximity between the employer's knowledge of a protected activity and an adverse employment decision is not enough to defeat summary judgment. *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997) ("[I]t is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.") Alone, temporal proximity may not be enough to defeat summary judgment when the temporal relationship is not unusually suggestive or is too attenuated to create a genuine issue of fact. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

Here, the Court is presented with an interesting factual situation that is different from *Kachmar* and *Farrell*. In the case *sub judice*, plaintiff had already been terminated and was interviewing for another job in the company when she informed her employer that she had filed a charge with the EEOC.[5] Plaintiff then alleges that she did not obtain a new job at the company that just terminated her, but instead hired a different candidate. Plaintiff's adverse employment decision had already happened when she was terminated from her position. The fact that she then decided to go on an interview for a different position within the company and incorrectly tell her interviewer that she had filed an EEOC complaint (which she admits was at the advice of counsel, *see* Pl.'s 56.1 Stmt. at ¶ 62) appears to be more of a sting operation against the company in an attempt to later support a retaliation claim if she did not get a position for which she was

---

[5] The Court notes that the interview in question allegedly took place in early November 2007, Ms. Chaneski hired MG for the position in late November 2007, and plaintiff's charge was not filed with the EEOC until December 18, 2007. However, it is also undisputed that plaintiff did tell Ms. Chaneski that an EEOC charge had been filed.

unqualified than an actual legitimate attempt to obtain that job.  Plaintiff walked into a job interview for which she was plainly unqualified at a company that recently terminated her, told her interviewer (and friend) that she had filed an EEOC charge (even though she hadn't in fact filed the Charge yet), and complains of retaliation when she did not get the job.  These facts cannot support a claim for discriminatory retaliation, because this activity cannot constitute an "adverse employment action."

Even assuming *arguendo* that a *prima facie* case of retaliation has been made, defendant has articulated a legitimate, nondiscriminatory reason for not hiring plaintiff.[6]  She was simply not qualified for the job.  Plaintiff has presented no evidence of any discriminatory animus that led to her not being hired for the Fine Fragrances job, relying simply on the fact that she notified her interviewer that an EEOC Charge had been filed.  *See Truesdell v. Source One Personnel*, Inc., 2009 U.S. Dist. LEXIS 48703, at *8 (D.N.J. 2009) ("While . . . temporal proximity can be sufficient to establish a prima facie case, it alone is not sufficient to rebut Defendant's proffered reasons for, or show that discrimination was more likely than not, a motivating or determinative cause of, the adverse employment action").

Based on the undisputed material facts and taking all inferences in a light most favorable to the plaintiff, the Court must conclude that plaintiff has failed to state a retaliation claim as a matter of law.  The Court will grant summary judgment on claims III and IV of the complaint.

  **C.**  **Motion Appealing Judge Arleo's Order of Sanctions**

    *1.*  *Facts and Procedural History*

---

[6] The same burden-shifting framework of *McDonnell Douglass* applies to Retaliation claims as well as Discrimination claims.  *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000).

Plaintiff's counsel also appeals Judge Arleo's order imposing sanctions of approximately $18,000. (Doc. No. 46.) These sanctions were imposed in response to plaintiff's counsel's suggestive and argumentative speaking objections during the deposition of plaintiff's expert, Mr. Soudry. Further, Judge Arleo sanctioned plaintiff's counsel for serving an untimely new expert report without requesting the Court's permission and in violation of the Court's prior scheduling order. Judge Arleo gave plaintiff's counsel a choice of sanctions: they could withdraw the untimely expert report (which contained new data supporting an age bias), or rely on the new expert report and pay for Givaudan's attorneys' fees and expenses associated with preparing for and taking the expert's initial deposition regarding the first expert report. By letter dated February 22, 2010, plaintiff's counsel elected to rely on the new report. (Lario Cert. Ex. D; Doc. No. 50-1.) After a flurry of further letter correspondence with Judge Arleo, she entered an Order dated March 12, 2010, directing plaintiff's counsel to reimburse Givaudan's counsel for: "all attorney fees and expenses associated with defendant's counsel preparation for and taking of Mr. Soudry's deposition . . ." (Doc. No. 44.)

The speaking objections that occurred on the record during Mr. Soudry's deposition, when coupled with the extremely late supplemental expert report, paint a troubling picture. Examples of speaking objections, taken directly from the record, are as follows:

When Mr. Soudry was shown a list of retirees that he admitted reviewing but not mentioning in his report, he was asked by Givaudan's counsel, Wendy Johnson Lario, why the retiree list was not relevant. Ms. Elliott (plaintiff's counsel) interjected an answer:

> Lario: . . . I do know that the list that we've just marked as Soudry 12 was produced to you in response to a request, actually in response to an interrogatory that asked for identification of those who were retirees and who

>were not terminated. It is a list that Mr. Soudry has acknowledged that he reviewed, so for purposes of my deposition, I'd like to continue without your interruption.
>
>Elliott: Well, he excluded this list from his report because it had nothing to do with . . . involuntary termination.

(Soudry Dep., 87:15-88:3.)

Ms. Elliott interjected answers before her expert could testify on several other occasions:

>Lario: In connection with your terminated list, you also indicated that you excluded New York employees, correct?
>
>Elliott: It's possible that this list–
>
>Lario: Ms. Elliott, please
>
>Elliott: Let me clarify. I think this list is an incorrect list of what he relied upon.
>
>Lario: Please, can we please just focus on–
>
>Elliott: We are assuming that this list is correct, and when we are looking at the second page of the attachments to Soudry 8–
>
>Lario: Okay–
>
>Elliott: –I think that that would explain it, because the point is there were over ten employees that he included as 55 and over, and he did several analyses, so he produced this, this document from his computer, but it's some other analysis.

(*Id.* at 99:9-100:4.)

>Elliott: I really think that that's what explains it that this list is wrong. It's the same number of people. If you take out the New York people and leave in the so-called retirees, it's the same number of people.

(*Id.* at 101:13-17.)

>Lario: Why didn't you produce your spreadsheet?
>
>Soudry: To produce the spreadsheet?
>
>Lario: Yes.
>
>Soudry: I could produce it if you would like.
>
>Lario: Why didn't you?
>
>Soudry: I didn't think I should produce it.
>
>Lario: Why?
>
>Soudry: Did you ask for a spreadsheet?
>
>Lario: I asked for all of the information upon which you've relied and reviewed, yes, I did?
>
>Soudry: My–
>
>Elliott: I think it's here. He did produce it. That's his spreadsheet.

(*Id.* at 102:21-103:9.)

>Lario: Mr. Soudry, are you sitting here and telling me today that there are other spreadsheets that you prepared that support your list of terminated employees that you did not produce?
>
>Elliott: Yes, by mistake. That's the whole point of this information that he mistakenly produced to you.
>
>Lario: I've asked your witness a question.
>
>Elliott: I can finish. I can finish...

(*Id.* at 103:20-104:5.) The record is replete with many other examples of interruptions, improper objections, and plaintiff's counsel plainly testifying on behalf of her witness.

On November 10, 2009, plaintiff produced a new expert report and submitted it to the Court without seeking leave or permission to do so. (Doc. No. 25-1.) Thereafter, defendant filed

15

a motion to exclude the new expert report. (Doc. No. 23.) In a hearing on this matter, Judge Arleo explained her "concerns" about plaintiff's counsel's deposition conduct "against the backdrop of Federal Rule of Procedure 30," which provides "[a]n objection must be stated concisely in a non-argumentative and non-suggestive manner." She then spoke about plaintiff's counsel's "flagrant violation of the scheduling order" by serving a supplemental expert report "out of time . . . without going first to either myself or even to the district judge" and explained that the Court may sanction a disobedient party and/or her attorney pursuant to Federal Rule of Civil Procedure 37(b)(2)(c). Judge Arleo noted that awarding defense the costs of the deposition that was obviated by the new expert report was "the minimum sanction" designed to "put defendants in the same position they would have been in . . . if the report had been served with appropriate information in the first instance."

Platinff's counsel appeals this award of sanctions, specifically by arguing that the mistake in the original expert report was "engendered by defendant's own failure to provide a rule 30(b)(6) witness with knowledge of defendant's employee data" and "because the expenses associated with the first deposition are not the accurate measure of defendant's expenses resulting from the corrected report." (Pl.'s App. Br. at 22; Doc. No. 50.) Plaintiff's counsel argues that the new expert report only contained a change in one number – that 14 of the 29 terminated employees were aged 55 or over, not the 10 out of 29 in the original report – and thus the change is *de minimis* and did not prejudice the defendants. (*Id.* at 25.)

   2.  *Standard of Review*

Federal Rule of Civil Procedure 37(b)(2)(c) provides:

**(b)  Failure to Comply with a Court Order.**

16

> . . .
>
> (2) *Sanctions in the District Court Where the Action is Pending*
>
>     (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
>     . . .
>
>     (ii) Prohibiting the disobedient party from . . . introducing designated matters in evidence;
>
>     . . .
>
>     (iv) treating as contempt of court the failure to obey any order. . .
>
>     . . .
>
>     (C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2)(c). A United States Magistrate Judge has broad discretion in deciding a discovery motion. FED. R. CIV. P. 72(a). "A Judge shall consider the appeal . . . and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L. CIV. R. 71.1(c)(1)(A). A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985); *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 387 (D.N.J. 1990)

(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### 3. The Magistrate Judge's Order is Affirmed

Plaintiff's counsel cannot meet the standard to be applied on this appeal. Plaintiff's counsel erroneously argues that Judge Arleo imposed sanctions because "correction of this one number in Mr. Soudry's report did not alter either the methodology or the conclusion of his timely served report." (Pl.'s App. Br. at 16; Doc. No. 46.) Plaintiff's counsel then argues that their expert was "confused" by "defendant's own wrongdoing in not producing a 30(b)(6) witness with knowledge of the defendant's employee data." (*Id.* at 22-23.)

Defendant argues that plaintiff's appeal completely ignores the unprofessional conduct that plaintiff's counsel exhibited at Mr. Soudry's deposition. (Def.'s Br. in Opp. at 26; Doc. No. 50.) Defendant argues that this conduct, *coupled with* the late-served corrected expert report, obviated the expert deposition of Mr. Soudry, and thus Judge Arleo awarded them with the costs associated with that deposition in the form of sanctions. (*Id.* at 31.) Finally, plaintiff's counsel argues that the amount of sanctions is not fair, and they should only be forced to reimburse defense counsel for the cost of a second, shorter deposition to correct the errors in the first.

The Court concludes that Judge Arleo did not err in sanctioning plaintiff's counsel, nor in the amount they were sanctioned. The correction to the report is not *de minimis*, and plaintiff's counsel's behavior at Mr. Soudry's deposition was unprofessional, inexcusable, and in violation of the Federal Rules. Fed. R. Civ. P. 30(d)(2); *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993). Further, plaintiff's counsel cannot argue that defendant's failure to produce a 30(b)(6) witness precipitated any confusion on the part of their expert. A failure to present objections to a Magistrate Judge on a non-dispositive motion waives those objections on appeal to the District

Court. *Health Corp. of Am. v. New Jersey Dental Ass'n.*, 77 F.R.D. 488, 492 (D.N.J. 1978) ("Since this argument was not presented to the Magistrate for his consideration before decision, the court will not consider it now"). Finally, the Court agrees with Judge Arleo that plaintiff's counsel's conduct rendered the results of the first expert deposition completely useless, and full reimbursement for the costs of that deposition was the proper award. The Court will affirm Judge Arleo's award of sanctions.

### III. CONCLUSION

For the reasons stated herein, the Court will grant defendant's motion for summary judgment and affirm Judge Arleo's award of sanctions. An appropriate form of order is filed herewith.

Dated: June 1, 2010

        s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.